Certified Mail Number 7017 2680 0000 9293 9489

**FILED**
U. S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DISTRICT**

SEP − 3 2019

BY
DEPUTY_____

| | | |
|---|---|---|
| DAWSON ESTATE, SHEIK TEHUTI | § | |
| HEIR & GRANDSON OF WILL DAWSON | § | |
| DEED HOLDER | § | |
| In Propria Persona Sui Juris | § | |
| | § | |
| Plaintiffs, | § | Civil Action No.6-18-CV-550 |
| | § | |
| Vs. | § | |
| | § | |
| KELCY L. WARREN, Individually DBA CEO | § | |
| ENERGY TRANSFER | § | |
| MICHAEL J. HENNIGAN, Individually DBA CEO | § | |
| SUNOCO PIPELINES | § | |
| KELCY L. WARREN, Individually DBA CEO | § | |
| WEST TEXAS GULF PIPELINE | § | |
| MICHAEL K. WIRTH Individually DBA CEO | § | |
| CHEVRON PIPELINE | § | |
| ROYALL WATKINS | § | |
| Decease,1953, no (assignments) | § | |
| Defendants. | | |

# **AMENDED COMPLAINT**

**Good faith Claim by fraud and bad faith breach of contract is associated with fiduciary Business and Professional Code 17200. International fraud and injunction declaratory relief Civil Procedures Section 1060 violation Federal Tort Claims Act under 28 USC 2671 violation of Rule 37 (A), (B) 1,2,3(D1),4,5 (C) (F)1 failure to make disclosure or cooperate in Discovery required by Rule 26 (a).**

ı

26 (a) Rules of Federal Evidence 702, 703, or 705 reliability by Texas Railroad Commission records, Henderson County record the National Environmental Protection Policy Act NEPA 42 USC 4221 et. seq Environmental Protection Agency are regulatory group versus EPA 134 S. Ct. 2439, 47 (2014) Interstate Commerce Act 49 USC Department of Energy Organization ACT Pub. Law 95, 91 991 stat 565, 584 Pipeline Safety Act 49 USC 60101 et. seq.

Constitution United States Article 1 Section 8 North American Free Trade Agreement Act HR 3450 103rd Congress 1st section 1983 Uruguay round agreement HR 510 103rd Congress 2nd session 1994 NAFTA article 1102 1103 11:05 and 11:10 Pub. Law 112 78, 125 Stat 1289- 1290 December 23, 2011 North American Energy access act HR 4348 the 112th Congress 2nd session to 01204 Section 320 12 Clearfield Doctrine 18 U.S.C. 1964(a) Affidavit attached

<u>Judicial Notice:</u> Petition plead for interest and damages Sunoco Pipeline, West Texas Gulf Pipeline, Chevron Pipeline and Energy Transfer conversion of Lessor and Lease is bound to comply that Sheik Tehuti, Will Dawson have property return to him Kolp v. Prewitt, supra and a right to sue for conversion Cotton v. Heimbecher, Tex. Civ. App.

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................ 3

TABLE OF AUTHORITIES.................................................................. 4

INTRODUCTION ................................................................................ 1

PARTIES .............................................................................................. 7

JURISDICTION AND VENUE ........................................................... 9

LIMITATIONS ON POWERS.............................................................13
RAILROAD COMMISSIONER..........................................................17
THE UNPRECEDENTED ...................................................................22
HARM TO ...........................................................................................27
CLAIM FOR RELIEF..........................................................................28
PRAYER FOR RELIEF.......................................................................30

# TABLE OF AUTHORITIES

## Cases

Kolp v. Prewitt, supra ............................................................................2
Cotton v. Heimbecher, Tex. Civ. App. .................................................2
Trinsey v. Pagliaro, D.C. Pa. 1964, 229 F. Supp 647 ........................8
NLRB v. Noel Canning, 134 S. CT. 2550 (2014) .............................11
Zivotofsky v. Clinton, 132 S. Ct. 1421, 1428 (2012) .......................11
Franklin v. Massachusetts, 505 U. S. 788, 828, (1992) ....................12
Webster v. Doe, 486 U.S. 592, 603-5 (1988) ...................................12
Youngstown Sheet & Tube Co. v. Sawyer, 343 U. S. 579 (1952) .........................12
Kent v. Dulles 357 U. S. 116, 127-28 (1958) ..................................12
Panama Ref. v. Ryan, 293 U. S. 388 (1935) .....................................12
Larson v. Domestic and Foreign Commerce Corp., 337 U. S. 682, 690 (1949) ..........12
Dames & Moore v. Regan, 453 U. S. 654, 668 (1981) ......................13
Chamber of Commerce v. Reich, 74 F.3d 1322, 1326 (D. C. Cir. 1996) ...................13
Clearfield Trust Company v. United States 318 U.S. 363 – 371 (1942).....................14
United States v. W. Union Tel. Co., 272 F. 893, 894 (2d Cir. 1921) ...................... 17


## Statutes

18 U.S.C. 1964 (a) .............................................................................4
28 U.S.C. 2671 ..................................................................................7
28 U.S.C. 1391 ..................................................................................7
28 U.S.C. 1331 ..................................................................................7
28 U. S. C. §§ 2201- 2202 .................................................................7
49 U. S. C. § 1 .................................................................................16
42 U. S. C. § 7172 ...........................................................................16
49 U. S. C. § 60101 .........................................................................16
Pub. L. 95-91, 9 91 Stat. 565, 584 .....................................................25
The Freedom of Information Act 5 U.S.C. 522 ..................................25

1 **<u>INTRODUCTION</u>**

    1.  This case possesses the question whether the Constitution grants power, unsupported by any statute and contrary to the express wishes of the Dawson Estates to prohibit the future development on the basis that the pipeline crosses our property and if permitted to proceed operations.

    2.  In particular, this case challenges Sunoco Pipeline CEO Michael J. Hennigan, West Texas Gulf Pipeline CEO Kelcy L. Warren, Chevron CEO Michael L. Wirth, Energy Transfer CEO Kelcy L. Warren, Royall Watkins and all pipelines extended from established domestic pipelines system when (i) the Constitution expressly commits regulation of domestic and international Commerce to Congress; (ii) Congress has acted to facilitate the development of such facilities domestic Commerce based on an assertion of unilateral power and or based on any objections to the nature of the Commerce undertaken by the facility.

    3.  The Defendants of the four companies separately or together, the pipeline is one of the largest oil pipelines in Texas.  This would interconnect with and extend from extensive existing oil pipelines through the property in the state. Those existing pipelines including the original pipeline, which was approved by Royall Watkins in 1953 and built and operated by the Defendants to transport crude oil. Those existing system of oil pipelines in Texas; only a small portion of the Sunoco pipeline would extend across the Dawson Estate.

    4.  If Royall Watkins had not died in 1953, any prior well assignee or grantor that could possibly support the trespassing, damages and non-payment has enacted State status that limits

the property in Sunoco action.  The domestic property fraud, trespassing and damages much less one supported significant domestic commerce; private property violation of entrance assignments, will or grant.

5.  The basic principles of Constitutional Law and Homestead Law established that Sunoco exceeded their authority where, they purport to act without statutory authority and contrary to the expressed will to resolve an issue of domestic commerce, that the constitution authorizes Texas Railroad Commission and District Court to address. That conclusion is especially clear where the Sunoco reason for aggrandizing is power at the expense of Sheik Tehuti Dawson Estates to negotiate with fraud. Sheik Tehuti Dawson's Estate, Sunoco's loss of power must arise from a statute or the constitution here it is grounded in neither.

6.  The Federal courts are in power to declare that a purported exercise Defendants power is unsupported by statutory or constitutional authority and to prevent executive branch officials from enforcing the unconstitutional decision.  The kindness has been harmed by the determination that Sunoco is prohibited from constructing and operating pipeline and request that the Defendants delegation and injunction barred their efforts to give effect to the trespassing and damages.

II. The parties

7.  Plaintiff DAWSON ESTATE, SHEIK TEHUTI is the owner by heirship authorized under the law of Texas. DAWSON ESTATE, SHEIK TEHUTI maintains its principal place of business at 15702 CR1315, Crossroads, Texas 75248.  Its principal business is to homestead, farming and agricultural complex.

8.  The Defendants crude oil pipeline in support of Sunoco business. Sunoco Pipelines owns the West Texas Gulf Pipeline and it owns the Texas facilities of the proposed West Texas Gulf Pipelines. Chevron Pipeline applied Royall Watkins lessor permit to enable the construction and operation on DAWSON ESTATE, SHEIK TEHUTI facility for the proposed Sunoco West Texas Gulf Pipeline. The denial of that application for Royall Watkins lease permits determination that permits are all invalid, fraudulent and gives rise to this lawsuit.

9.  Defendant CEO Michael J. Hennigan of Sunoco Pipeline is named in his official capacity as the CEO Michael J. Hennigan of Sunoco is responsible for communicating and coordinating with the Texas law with respect to issues affecting the Sheik Tehuti Dawson Estates. CEO Michael J. Hennigan of Sunoco Pipeline is also responsible for exercising certain powers over private and public land, as CEO Michael J. Hennigan of Sunoco pipeline he claims possess and have delegated the field agents and employees of Sunoco.

10.  Defendant CEO Kelcy L. Warren of West Texas Gulf Pipeline in the official capacity as West Texas Gulf Pipeline. CEO Kelcy L. Warren West Texas Gulf Pipeline is responsible party and direct litigation on behalf of West Texas Gulf Pipeline.

11.  Defendant CEO Michael K. Wirth of Chevron Pipeline in his official capacity is responsible for the transportation of all the crude oil primary responsibility for Chevron Pipeline products oil and gas on Sheik Tehuti Dawson Estates.  He has oversight responsibility for Chevron Pipeline devoted to crude oil transportation concerns.

12.  Defendant CEO Kelcy L. Warren of Energy Transfer in the official capacity as Energy Transfer. CEO Kelcy L. Warren of Energy Transfer is responsible party and direct litigation on behalf of Energy Transfer.

13.  Defendant Royall Watkins(deceased) in his official capacity as lessor.

## III.  **JURISDICTION AND VENUE**

14.  The court has federal question jurisdiction under 28 U.S.C. 1331 and 18 U.S.C.1964.

15. The venue is proper in this District under 28 U. S. C. 1391(e). Plaintiffs maintain their principal place of business in Crossroads, Texas and the Sunoco Pipeline extends into this District.

16.  This Court is authorized to award the requested relief under the Declaratory Judgment Act, 28 U. S. C. §§ 2201- 2202, and under Article III of the United States Constitution and Texas Homestead Law.  6th Amendment of the Constitution of the United States see Trinsey v. Pagliaro, D.C. Pa. 1964, 229 F. Supp 647

## IV. **BACKGROUND**

### A.  **The maintenance in proposed use of the Sunoco Pipeline**

17.  DAWSON ESTATE, SHEIK TEHUTI has 101 Acres of interconnected petroleum pipelines in the State of Texas. These pipelines include West Texas Gulf Pipelines, which commenced operations in early extension of Sunoco Pipeline and the original proposed as part of Sunoco Pipeline project and the lateral a pipeline originally installed as part of Sunoco Pipeline

project which extended from Cayuga, Texas to a point in Longview, Texas. The installed Sunoco Pipeline would connect to the existing West Texas Gulf Pipe Line delivering oil from Dawson Estate as shown below and what affect the operation in profitability of Dawson Estate, Sheik Tehuti.





18.  Sunoco Pipeline and West Texas Gulf Pipeline sought a permit from the Texas Railroad Commission.  The Sunoco Pipeline had Royall Watkins designated and empowered to receive such permitting request to leave and interagency elevation process.  See Exec. Order number 13337, 69 Fed. Reg. 25,299 (Apr 30,2004).

19.  Issuance of a permit will serve the evidence of fraud and to notify other state officials of the determination.

20.  In 1953, Royall Watkins died and is buried in Dallas, Texas, his wife Julia Myrick Watkins died in 1960 and the daughter Margaret Watkins was last living died in 1975.They all are deceased with no will therefore, the Defendants is in violation of trespassing, damages, no payments for easement and mineral rights oil transfer.

21.  Sheik Tehuti, Will Dawson's Estate, has been a stable and reliable source, and does not require exposure of crude oil in high transport and railway route that may be a security and environmental concern with the animals, farmland, water supply and agriculture.

22.  Sheik Tehuti notified the West Texas Gulf Pipeline facility that transporting of up to 900,000 barrels per day of crude oil was being sent to the Longview regions of Texas from Cayuga, Texas.  Approximately 100,000 barrels per day of the capacity would be devoted to transporting oil originating in the Cayuga Field from the wells on Sheik Tehuti Dawson Estate property.

Sunoco Pipeline, West Texas Gulf Pipeline, Chevron Pipeline and Energy Transfer

23.  The additional information prompted the Railroad Commission which had issued a permit. Royall Watkins again concluded that the installed pipeline, shows 33 unplugged wells that affect livestock, water and agricultural farming.

A. Good Faith Trust

24. The Sunoco Pipeline that proceeded with the pipeline would advance their sister companies, in contrast, prohibited Sheik Tehuti Dawson Estates from using the property or being compensated for the use of the property.

25.  This fraud has to do with the pipeline's crossing the Sheik Tehuti Dawson Estate reflected in the negotiations with domestic economic activity could have precisely benefited, however, the Constitution commits such regulation of international trade and domestic economic affairs to the Texas Railroad Commission, and not to the Defendants unilateral powers.

## V. <u>LIMITATIONS ON SUNOCO PIPELINE, WEST TEXAS GULF PIPELINE,</u> <u>CHEVRON PIPELINE ENERGY TRANSFER POWERS</u>

### A. The Constitutional Framework

26.   The exercise of Defendants power that purports to prohibit the use of private property is unauthorized by Statute, and unlawfully exceeds the powers granted to Defendants under the Constitution or acquiesced in by Railroad Commission.

27.   The Supreme Court's case made it clear that the federal courts are to decide whether Defendants have reported to exercise a power that the property belongs to Sheik Tehuti, Will Dawson Estate or is otherwise contrary to the Constitution. See, e.g., NLRB v. Noel Canning, 134 S. CT. 2550 (2014) Defendants exceeded constitutional authority in making certain recess appointments; Zivotofsky v. Clinton, 132 S. Ct. 1421, 1428 (2012) (judicial duty to decide " what the law is " encompasses cases "where the question is whether Congress or the Executive is aggrandizing its power at the expense of another branch") (citation omitted).

28.   Courts regularly consider challenges to the lawfulness of Sunoco Pipeline, West Texas Gulf Pipeline and Chevron Pipeline, action when they are undertaken through a suit seeking to enjoin the officers who attempt to enforce the Defendants directive. Franklin v. Massachusetts, 505 U. S. 788, 828, (1992) Scalia, J., concurring) (citing various cases). The Supreme Court has repeatedly made clear that federal courts are obligated to address claims that Defendants and Royall Watkins or officials exercising powers have acted beyond their Constitutional authority to enforce the separation of powers. See, e.g., Zivotofsky v. Clinton, 132 S. CT. at 1428; Medellin v. Texas, 522 U. S. 491, 523 (2008); Franklin v. Massachusetts 505 U.

S. at 801 (plurality); Webster v. Doe, 486 U.S. 592, 603-5 (1988); Youngstown Sheet & Tube

Co. v. Sawyer, 343 U. S. 579 (1952) (holding Sunoco Pipeline, West Texas Gulf Pipeline and

Chevron Pipeline order unconstitutional and invalid); Panama Ref. v. Ryan, 293 U. S. 388

(1935) (same) see also Larson v. Domestic and Foreign Commerce Corp., 337 U. S. 682, 690

(1949) (courts may enter injunction against Defendants and Royall Watkins where the order

conferring power upon the Congress is claimed to be unconstitutional.  Indeed, the Railroad

Commission has acknowledged that because the scope of the Defendants discretion to act under

law is limited by the Constitution an independent claim of Defendants and Royall Watkins a

violation of constitution would certainly be reviewable. Chamber of Commerce v. Reich, 74 F.3d

1322, 1326 (D. C. Cir. 1996).

29.  To decide whether a specific Defendants action had exceeded the power of that

office, courts use a three-part framework that begins with understanding that the Congress

authority to act, as with the exercise of any governmental power, must stem either from an act of

Congress or from the Constitution itself.  Medellin, 552 U. S. at 524 (quoting Youngstown, 343

U. S. at 585).

30.  This framework also recognize that Sunoco Pipeline, West Texas Gulf Pipeline and

Chevron Pipeline powers are not fixed but fluctuate, depending on their disjunction or

conjunction with those of Congress. Youngstown 343 U. S. At 635 Jackson J concurrent.

Defendants; Jackson Jade concurrent. The Sunoco pipeline West Texas Gulf Pipeline and

Chevron Pipeline powers must be assessed in light of Congress extensive power, set forth in the

Domestic Commerce Clause and the Congress Commerce Clause, over domestic and commercial

facilities such as Defendants U. S. Const. art. I, § 8, cl. 3.

31. First, when Railroad Commission has approved the Defendants action authority is at its maximum for it includes all that possesses in his own right plus all that Railroad Commission can delegate. Medellin, 552 U. S. at 524 (quoting Youngstown, 343 U. S. at 635).

32. Second, when Sunoco Pipeline acts in absence of either contract, assignment or grant or denial of authority, he can only rely upon his independent powers. Medellin, 552 U. S. at 524 (quoting Youngstown, 343 U. S. at 635) (emphasis added).  In such a case, the validity of the Defendants hinges on a consideration of all circumstances which might shed light on the views of the Legislative Branch toward such action. Dames & Moore v. Regan, 453 U. S. 654, 668 (1981).  Courts then consider on one hand, whether Congress has enacted legislation, or even passed a resolution, indicating its displeasure with the Defendants actions, id. at 687, Where a claim of a deceased man is expressed in broad terms, but that same power has in practice been exercised quite narrowly, courts will find acquiescence only where the claim powers have been both exercised by the Defendants and implicitly approved by the Congress. See Kent v. Dulles 357 U. S. 116, 127-28 (1958); see also Medellin, 552 U.S. 531 (confining claims of acquiescence to the narrow set of circumstances directly supported by past practice).

33.  Third, when Defendants action is incompatible with expressed or implied will of permit power is at its lowest ebb, and a court can sustain his actions only by disabling the Texas Railroad Commission and Congress from acting upon the subject. Medellin, 552 U. S. at 525 (quoting Youngstown, 343 U. S. at 637 – 38). In other words, only in the rare circumstances where the Defendants power is exclusive may Texas Railroad Commission or Congress... not enact a law that directly contradicts his assertion of that power. Zivotofsky v. Kerry, 135 S. CT. 2076, 2095 (2015). Any Sunoco Pipeline, West Texas Gulf Pipeline and Chevron Pipeline claim

to a power at once preclusive must be scrutinize with caution, for what it is at stake is the equilibrium established by our constitutional system. Youngstown, 343 U. S. 638 (Jackson, J., concurring).

34. This framework applies even when Sunoco Pipeline, West Texas Gulf Pipeline, Chevron Pipeline and deceased Royall Watkins asserts that his challenged actions were motivated by fraud contract assignment or grant. The Supreme Court in Clearfield Doctrine, Clearfield Trust Company v. United States 318 U.S. 363 – 371 (1942) directing state courts to give effect to a decision of the Court of Justice even though the CEO Michael J. Hennigan, CEO Kelcy L. Warren, CEO Michael L. Wirth and claim to be exercising is authority over Sheik Tehuti Dawson's Estate merely because pipeline commerce affairs are at issue. Zivotofsky v. Kerry, 135 S. Ct at 2090. Rather, whether the realm is domestic, it is still the Congress not the executive branch that makes the law, and it is essential that the Texas Railroad Commission role in domestic affairs be respected and warranted. When the Defendants usual focus against the Sheik Tehuti Dawson Estate private property law of our society and are redirected and work toward domestic matters. 343 U. S. At sea for 5 over at the Seas Jackson, J., concurrent close parentheses. With respect to the West Texas Gulf Pipeline Chevron pipeline approximately subjects of limitation consistent with a constitutional Republic whose law and policy-making branch is a representative Texas Railroad Commission. id. at 645-46 and Texas Railroad Commission.

35. The asserted Sunoco Pipeline Defendants power to prohibit Sheik Tehuti Dawson Estates exceeds the Constitutional limit, because it concerns a matter committed to Texas Railroad Commission and is contrary to the express and implied will of Congress. The dispute

falls within the third Youngstown category, and no basis exists to argue that Congress is without power over the pipeline's maintenance. The asserted Defendants power would violate the Constitution within the framework of the second Youngstown category because Congress has not acquiesced in the rationale for our nature of the Sunoco Pipeline, West Texas Gulf Pipeline and Chevron Pipeline power invoked to block payment of fraudulent lessor Royall Watkins. The Defendants need to prohibit trespassing to secure greater negotiating power with Sheik Tehuti Dawson Estate and deceased lessor has asserted to limit any land in the past, the breadth of its effect is unprecedented, and the prohibition encroaches on the power committed by the Constitution to Congress to regulate domestic commerce.

## VI.  Railroad Commissioner – Texas Gas Line Permit Trade is Empowered to Regulate the Trade at Issue and has Displaced any Unilateral Contract Power to Prohibit Sheik Tehuti Dawson Estate of Property Rights and Land Use

36.  Article 1 Section 8 of the Constitution provides for Congress to regulate commerce with the Railroad Commission and among the several States. The Constitution thus provides Congress with the express power to authorize, regulate or prohibit the development of commercial transportation facilities such as the Defendants which crosses Sheik Tehuti Dawson Estate.

37.  The Court could choose to exercise this power by directing or authorizing the Defendants or other officials of the Executive Branch to show a good faith claims contract, deed, assignment or grant signed by Royall Watkins.

38. First, Congress has extensively regulated interstate oil pipelines such as Defendants including by establishing the pre-conditions for their operation and regulatory mechanisms to govern their rate and terms of service. Congress first established such regulatory mechanisms and related substantive obligations in a 1906 amendment to the Interstate Commerce Act, see 49 U. S. C. § 1 (1988), and has since established and directed the Federal Energy Regulatory Commission to administer these provisions, see Department of Energy Organization Act of 1977, Pub. L. 95-91, 9 91 Stat. 565, 584 (1977), 42 U. S. C. § 7172. Congress created additional safety requirements for all pipelines through enactment of the Pipeline Safety Act, 49 U. S. C. § 60101 et seq., and created and directed the Pipeline and Hazardous Materials Safety Administration to administer and enforce those requirements.

39. Congress has adopted projects with significant domestic effects. These include, for example, the Clean Water Act, the National Historic Preservation Act, and the Endangered Species Act.

40. Congress adopted statutory regulations for oil pipelines that are similar in nature by the President.  See United States v. W. Union Tel. Co., 272 F. 893, 894 (2d Cir. 1921) (affirming district court and similarly finding Sunoco Pipeline authority trespassing on private property to be unconstitutional), rev'd as moot on consent of the parties, 260 U.S. 754 (1922).

41. Second, Congress has implemented the North American Free Trade Agreement (NAFTA) and the World Trade Organization (WTO) agreements. See North American Free Trade Agreement Implementation Act, H. R.3450, 103d Cong., 1st Sess. (1993); Uruguay Round Agreements Act, H. R. 5110, 103d Cong., 2d Sess. (1994). Right to contract Clearfield Doctrine.

42.  The right to contract itself, the related implementing legislation passed by Supreme Court is designed to facilitate trade and investment between property owner Lessor and Lessee including trade in petroleum products and petroleum-related investment. NAFTA and its implementing legislation commit the United States, acting through its Congress officials, to regulate permit trade in a manner designed to ensure consistent and non-discriminatory regulation with respect to energy and basic Petco- chemical good.  See NATFA Art.603 (1). Limitations on such trades are permitted only in limited circumstances.

43.  In particular, legislation provides the statutory approval that was necessary to have NAFTA Articles 1102, 1103, 1105 and 1110 go into effect. NAFTA Articles 1102 and 1103 provide that the United States shall provide national treatment and most favored nation treatment, respectively, private property.  These provisions prohibit discrimination against private property Clearfield Doctrine provides that in accordance with contract in law, including fair and equitable treatment and full protection and security. This position has been construed to prohibit regulations or prohibitions on contracts that are arbitrary or inconsistent with the legitimate expectations. Given the unprecedented basis for and nature of the denial of Defendants.  Permit for the denial is arbitrary and frustrated plaintiffs' legitimate ownership of property. NAFTA Article 1110 prohibits indirect expropriations of investments, which occur when a government action significantly reduces the value of an investment, without compensation.  Sheik Tehuti separately invoking rights provided to it under Petition its intent to file an arbitration claim against the Defendants seeking damages for violations by Articles 1102, 1103, 1105, and 1110.

44. Similarly, who passes to Congress of implementing legislation, the Uruguay Round Agreement Act, was necessary to make effective an important provision of the WTO Agreement related to import restrictions: Article XI:1 of the General Agreement on Trade and Tariffs 1994 (GATT). That article provides: No prohibition or restrictions other than duties contract taxes, or other charges, whether made effective through quotas, import or export license [sic] or other measures, shall be instituted or maintained by any [Member] on the importation of any product of the territory of any other [Member]... This provision applies to Defendants and other sister companies for violations of the Clearfield Doctrine and WTO Agreements in connection with the Defendants.

45. Through fraud there is no Statute of Limitations violations of the 6th Amendment.

46. Third, initially Congress objected to all dry well, and was empowered to withhold decision on the matter, therefore, a report to the court providing a justification for the judge's determination. The statute also provided that if Defendants obtained a permit containing conditions specified in the statute shall be in effect by operation of law. Pub. L. 112-78, 125 Stat. 1289-1290 (December 23rd, 2011).

47. Based on the fact that the information necessary to access whether a contract exists Congress gathered the information necessary to approve the project and protect the American people. The Congress made clear that this action did not preclude and subsequent permit application, and, as noted, all Defendants at 15702 CR1315, Crossroads, Texas, Sheik Tehuti Dawson Estate is invalid.

48.   When the court convened, the first evidence introduced of the Texas Railroad Commission was a permit claiming Royall Watkins as lessor for Defendants.

49.   By these actions the Congress acts that the Supreme Court has used to determine whether the Sunoco Pipeline has acted contrary to the express or implied will of Congress or Texas Railroad Commission see Kent v. Dulles, 357 U. S. at 128; see,  also e.g., Youngstown, 343 U. S. at 586 open (opinion of Black, J., for the court) (legislative history of relevant statues, including rejection of a proposed amendment, demonstrated that Congress had refused to adopt a statute granting the claimed power to the Defendants; id. at 599-601 (concurring opinion of Frankfurter, J.) (similar reliance on legislative history); id. at 639 & nn. 6-8 (concurring opinion of Jackson, J.) (agreeing with opinions of J. Black, Frankfurter & Burton on this issue); id. at 657 (concurring opinion of Burton, J.) (legislative history demonstrated Congress had reserved to itself the opportunity to authorize seizure to meet particular emergencies). Even a resolution by Congress made assertion of power. Dames & Moore v. Regan, 453 U. S. 654 at 687-88 (Just as importantly Sunoco Pipeline CEO Michael J. Hennigan, West Texas Gulf Pipeline CEO Kelcy L. Warren, Chevron CEO Michael L. Wirth and Energy Transfer CEO Kelcy L. Warren and Royall Watkins are relevant to that determination.  See Foreign Cables, 22 Opp. Att'y Gen. 13, 19 (1898).

50.   Because the denial of the permit for Royall Watkins, Defendants are incompatible with the expressed or implied will of contract. The Defendants power is at its lowest ebb and can be sustained only by disabling Sheik Tehuti Dawson Estate and Texas Railroad Commission from acting up on the subject.  Medellin, 552 U. S. at 525 (quoting Youngstown, 343 U. S. at 637-38 (concurring opinion). But the Railroad Commission cannot be disabled from acting on

the subject of construction and operation of pipeline to transport crude oil from Cayuga, Texas Field, Sheik Tehuti Dawson Estate for sale to and within Texas, because Article I, § 8 of the Constitution gives Congress the authority to regulate domestic commerce. There has been no Defendants that has asserted a claim to the contrary, did so with regard to the pipeline.

51.  Congress and Texas Railroad Commission actions does preclude any Defendants power over the pipeline. Indeed, this case is stronger than Youngstown, where the Supreme Court held that President Truman lacked the authority to seize domestic steel mills, see 343 U.S. at 585.  The lack of authority here is also supported by the fact that fraud and trespassing to the pipeline directly interferes with private property and domestic commerce, the regulation of which textually committed to Congress by the U. S. Constitution. See Medellin. 552 U. S. at 524.

## VII. The Unprecedented Nature of and Basis for Defendants Unilateral Power to Prohibit Lease Payment to the Owner of the Property Located at 15702 CR1315 Crossroads Texas

52.  Under the governing constitutional framework set above, constitutional powers and the Defendants were without a lawful basis.

53.  The conclusion that the prohibition of the pipelines exceeded the lawful authority is further confirmed and separately compelled by the unprecedented reasons provided for prohibiting trespassing, damages and by the unprecedented scope of the domestic commerce affected by the decision. As described below, the prohibition of trespassing goes well beyond the limited authority to regulate facilities that has been exercised by Defendants subject to Railroad Commission ongoing control as prior permits have acknowledged.

54.  The limited scope of Defendants authority is reflected in the first, limited claim of unilateral contract power to address commercial facilities for discrete reasons, which would guide and set the boundaries on power in the decades that followed. The approval was based on Royall Watkins limited set of conditions: his review was designed to ensure only that Will Dawson Estate reciprocal rights and that Sheik Tehuti Dawson Estate owner and Lessor and that Defendants had acted only in the absence of legislation by Congress and legal contract. Sunoco Pipeline further committed to adhere to the principles he had outlined trespassing unless Railroad Commission otherwise directs.  22 Op. Att'y Gen.16,18.

55.  Applying these principles, indicated by tacit acquiescence of the Defendants trespassing and damages for the use of Sheik Tehuti Dawson Estate.

56.  At times during the next decade this limited unilateral power over Sunoco Pipeline merger with West Texas Gulf Pipeline there is no federal legislation conferring authority up on Sunoco Pipeline all to grant such permission, and in the absence of such contract legislation, Executive action... would have no binding force.  22 Op. Att'y Gen at 24 attorney general that in the absence of Lessor and Lessee conferring authority upon, this Department has no power to act in a matter.  22 Op. Att'y Gen at 24.

57.  In reviewing the permit statement of limited authority and subsequent practice acting that Royall Watkins died in 1953, power in the absence of legislative enactments, to control the land of Sheik Tehuti Dawson Estates.  Defendants actions are subject to subsequent Texas Railroad Commission action.  22 Op. Att'y Gen. at 27.  Congress basis for various approvals of facilities in the following decades. See, e.g., Granting of License for the Constr. Of a Gas Pipeline, 38 Op. Att'y Gen.163 (1935); Diversion of Water from Niagara River, 30 Op. Att'y

Gen.217 (1913); Wireless Telegraph-Int'l Agreement, 24 Op. Att'y Gen. 100 (1902); Cuba

Cables, 22 Op. Att'y Gen. 408 (1899).

58.  Many subsequent CEO of major oil companies, the Texas Railroad Commission

eminent role directly into the permits they granted to other commercial facilities. For example, a

permit for a pipeline running through Sheik Tehuti Dawson Estate and Texas Railroad

Commission made clear that the permits are subject to any action and by the Congress of the

United States confirming, revoking, or modifying in whole or in part the conditions and terms

upon which this consent is granted. Similar language respecting the power of the Congress to

control commercial facilities from fraud.

59.  The district judge, held that lacked power, observing the deceased's Royall Watkins

died in 1953, the wife of Royall Watkins, Julia Myrick Watkins died in 1960, the only sibling

and heir, their daughter Margaret Watkins died in 1975. The implication of the power contended

Defendants fraud, damages and conversion.

60.  Royall Watkins have no claim on the Dawson Estate the fraud extortion of funds has

easement damage collected billions of dollars by transferring and drilling 33 oil wells and

pipelines with invalid contracts fraudulent permits claimed Royall Watkins as lessor.

61.  The defendant have no good faith claim and has used fraud, extortion and damage

the property and land, water for farming, livestock and with such action and use of the land for

enrichments never paid Sheik Tehuti or Dawson Estates one penny for 80 years.

62.  Royall Watkins is buried at Sparkman Hillcrest Memorial Park and his wife Julia

Myrick Watkins is also buried at Sparkman Hillcrest Memorial Park.  The daughter Margaret

Watkins died 1975 her body was donated to science and there is no will, probate assignment or deed assignment, giving the defendants authority.  The Defendants has no proof of disclosure and today the transfer of crude oil violations of Clearfield Doctrine law of merchants UCC right to contract and UCC reservation of rights 1-308.

63.  The fraud no statute of limitation, Defendants has used fraud by changing name of sister companies.  There have been no payments for trespassing of surface rights, mineral rights, or property taxes.  There is no statute of limitation for fraud by conspiracy, the Defendants do not have an agreement or contract to lease the property at 15702 CR Road 1315 Crossroad, Texas principally responsible for domestic facilities the Texas Railroad Commission policy.  Texas Railroad Commission made clear action was to confirm to and be based on statutory authority.

64.  President Roosevelt and President Eisenhower thereafter established procedures governing Congress would exercise powers over facilities authorized by the Federal Power Act, Natural Gas Act, Kellogg Act. See Exec. Order number 10530, 19 Fed. Reg. 2709 (May 10, 1954) (cable connection address by Kellogg Act. See Exec. Order No. 10485, 18 Fed. Reg. 5397 (Sept. 9, 1953) (natural gas and electricity transmission facilities); Exec. Order No. 8202, 4 Fed. Reg. 3243 (July 15, 1939) Exec. Order 10530 and 10485 remains in effect and subsequent modified.

65.  The District Court decision noting the fact on public records, court records, and the Railroad Commission have proof of fraud from deceased application and permits.

66.  Upon information and believe, the permit application submitted by Royall Watkins for Sunoco Pipeline are the only applications for a major infrastructure project, pursuant to prohibited permit.  The permit was sought pursuant to prohibit the development of such a major facility comprised principally of domestic components, prohibited such a facility that would undertake significant domestic commerce, or prohibited the development of such a based on an objection to the nature of the crossing Sheik Tehuti and Dawson Estate commerce it would facilitate.

67.  The prohibition of construction at such major facilities, to predominantly designed to undertake significant domestic commerce.  No basis exists to claim that the Defendants has acquiesced, because of acquiescence can be found only in the acceptance and implicit endorsement.  The Defendants do not have reservation or right to seek to exercise power in the future. See, e.g., Kent v. Dulles, 357 U. S. at 128; see also Medellin, 552 U. S. at 531 (confining claim of acquiescence to the narrow set of circumstances directly supported by past practice).

68.  That particular rationale for prohibiting trespassing makes even clear that Defendants has exceeded their constitutional authority.  The efforts to transition to less-polluting forms of energy or the need to enhance negotiating, nor does it reflect the considerations set forth by prohibiting the fraud for the pipeline, because of non-contract.

69.  This case also significantly departs from prior practice because domestic U. S. pipeline system that is already regulated by U. S. law.  They are already transporting oil products from Cayuga, Texas into Longview, Texas that are indistinguishable from what those pipelines would transport.  The action thus implicates the two concerns that lead to fraud, trespassing and damages.

70.  The prohibition of an extensive domestic infrastructure project perception in community.  Absent express statutory authority to regulate such domestic facilities based on asserted harms arising from fraud, trespassing and omission, as the Supreme Court has recently confirmed in addressing the powers of the Environmental Protection Agency, acting under the direction of the president.  See Util. Air Regulatory Grp. V. EPA, 134 S. CT 2427, 2439 - 4 7 (2014).

71.  In short power to prohibit acquiesced.  Thus, good faith claim is lawful fraud and evidence to the fact.

## VIII.  HARM TO SHEIK TEHUTI AND DAWSON ESTATE

72.  In compliance Defendants conspiracy of undisclosed record with the Secretary of State, Texas Comptroller's office and Texas Railroad Commission and Certified Mail Number 7017 - 3380 - 0000 - 2790 - 5895 mailed July 27, 2018, have no disclosure of any rights or contract from a deceased man since 1953. The Freedom of Information Act 5 U.S.C. 522 is a Freedom of Information for the full disclosure of previously unreleased and the owner of the property at 15702 CR 1315 Crossroads, Texas 75148. The defendants have without contract trespassed under Federal Law of Safe Drinking Water Act, Hazardous Act and Resource Conventional Recovery Act.

73.  This complaint shows and presents the facts of common law, contract law, statutory law and the United States federal law shows the damage is in violation of U.S. Code Title 42 chapter 21 chapter 21 subchapter, the defendants have used and made billions of dollars using fraud claiming that a deceased man, Royal Watkins as lessor from 1949 until present. This is an

exclusion from participation of benefits and discrimination; that have destroyed all the surface uses for agriculture and water.  The damages that this conspiracy Texas Railroad Commission has on public record that 33 oil wells lease permits applications and collected billions of dollars from the fraudulent claims on the Texas Railroad Commission application, that has no delegation of authority.  This complaint had the pipeline conspiracy, that the Defendants and the Operators used fraudulent API numbers.  This is a violation of good faith claim, trespassing, collecting mineral interest, sold easement rights and fraudulently claiming Royall Watkins as the lessor. The deed on Henderson County public records number has Will Dawson as the owner since 1939 and he paid it in full in 1949.

74.  The proof of fraud by Defendants that violates federal law 133 civil rights Restoration Act 1987, Public Law number 100259, 102 stat 28 1988 there no procedures, no cleanup of easement for use of property, damages to property, collecting billions of dollars, fraudulent assignments with Royall Watkins as lessor.  The records filed in Henderson County records shows that in 1939, Will Dawson purchased the property, and Sarah Dawson, Fleater Dawson, Flossie Dawson and Sheik Tehuti are the heirs.  The court has jurisdiction to execute Executive Order 13166, the improving acres to the service for persons with limited English, and Sheik Tehuti Dawson Estate that do not practice law.

75.  The court has jurisdiction over executive order 12898 EPA to implement environmental justice of the undisclosed closure of land at 15702 CR 1315 Crossroads, Texas Dawson Estate.

## IX.  CLAIM FOR RELIEF

27

## COUNT ONE: UNLAWFUL TRESPASSING AND FRAUD

76. Defendants has put a gate and locked Dawson Estate posted signs easement 200 yards, unlawful trespassing, damages and fraud of contract. The Defendants incorporated by reference the allegations of the procedures, the decision to prohibit Sheik Tehuti from his property surface rights by posting signs. The Defendants created an easement, the denial of contract or authorized by Royall Watkins that denial are not authorized by any act of Texas Railroad Commission, commercial law, common law, statutory law, UCC Law or the Supreme Court and Texas Homestead Law.

77. The Defendants decision to prohibit Sheik Tehuti Will Dawson Estates any compensation for claim or relief for the billions of dollars extracted using surface rights, mineral rights and has not paid $0.01 to Sheik Tehuti or the Dawson Estate authorized by Royall Watkins who died in 1953.

78. The determination that Defendants operated giving effect to the court determinations are null and void, because they exceeded the power of the Texas Homestead Law.

79. The determination that West Texas Gulf Pipeline, Sunoco Pipeline, Chevron Pipeline and Energy Transfer on conduct, must stem from discrimination, prejudice and vigilante law, the evidence and facts on public records shows that the court implemented and enforced to give effect on the determination that West Texas Gulf Pipeline, Sunoco Pipeline, Chevron Pipeline and Energy Transfer would be lawful.

80. Any action taken by the defendants or any other office of the United States to implement and give an effective determination that West Texas Gulf Pipeline and Chevron

Pipeline, void due process of law of Congress or from construction and Youngstown 343 U.S. at 585.

81.  In such circumstances where fraud has been confirmed or conferred in the form of Royall Watkins lessor, lacking a contract because of constitutional inability West Texas Gulf Pipeline, Sunoco Pipeline, Chevron Pipeline and Energy Transfer trespassing caused damages to the property. The courts are authorized to order declaratory and injunctive relief to Sheik Tehuti Dawson Estate from West Texas Gulf Pipeline, Sunoco Pipeline, Chevron Pipeline and Energy Transfer from acting unlawful with domestic and foreign Commerce Court 337 U.S. 682 – 690.

82.  Plaintiff action to implement, enforce or give effect to the determination that West Texas Gulf Pipeline, Sunoco Pipeline, Chevron Pipeline and Energy Transfer cannot contract or operate on the Sheik Tehuti Dawson Estate.  The Defendants have made more than 300 billion dollars and have caused financial harm and damages to the property.  In the 80 years there has been zero payments for easement use, surface rights, or mineral rights causing the fraud, creating a fictional Theory by RICO Act and conspiracy to pay off public officials.

## COUNT TWO: EMOTIONAL DISTRESS AND PAIN AND SUFFERING

83. Pain and suffering is the legal term for the physical and emotional stress caused from injury. As a result of the Defendants' criminal trespassing and the filing of fraudulent permits, Plaintiffs have suffered aches, temporary and permanent limitations on activity, potential shortening of life, depression and scarring.

84. The frauds committed were reasonably foreseeable or anticipated to result in injury.  The fraud was knowing, intentional and reckless.  The Defendants had actual knowledge of the falsity of their actions and acted with intent to defraud.

85. The Defendants have made more than 300 billion dollars and have caused financial harm and damages to the property.  In the 80 years there has been zero payments for easement use, surface rights, or mineral rights causing the fraud, creating a fictional Theory by RICO Act and conspiracy to pay off public officials.


## COUNT THREE: DESTRUCTION OF PROPERTY AND FAMILIES

86.  Defendants actions destroyed the Plaintiffs' family unit.  The frauds committed were reasonably foreseeable or anticipated to result in the destruction of property and family unit.  The fraud was knowing, intentional and reckless.  The Defendants had actual knowledge of the falsity of their actions and acted with intent to defraud.

87. The Defendants have made more than 300 billion dollars and have caused financial harm and damages to the property.  In the 80 years there has been zero payments for easement use, surface rights, or mineral rights causing the fraud, creating a fictional Theory by RICO Act and conspiracy to pay off public officials.


## COUNT FOUR: ATTEMPTED MURDER AND RICO VIOLATION

88. Defendants had the required intent or "mens rea" for attempted murder.  Defendants' actions caused physical harm to Plaintiffs, such as aches, temporary and permanent limitations on activity, potential shortening of life, depression and scarring.  Plaintiffs almost died from Defendants' actions.

89. The Racketeer Influenced and Corrupt Organizations Act, commonly referred to as the RICO

Act or simply RICO, is a United States federal law that provides for extended criminal penalties

and a civil cause of action for acts performed as part of an ongoing criminal organization.  Since

attempted murder constitutes one of those acts, Defendants are in violation of the RICO Act.

90. The Defendants have made more than 300 billion dollars and have caused financial harm and

damages to the property.  In the 80 years there has been zero payments for easement use, surface

rights, or mineral rights causing the fraud, creating a fictional Theory by RICO Act and

conspiracy to pay off public officials.

## X.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for an order under declaratory judgment that defendants

are without legal authority to prohibit Sheik Tehuti and Dawson Estate of profits from surface

and mineral rights, from 1949 to the present, the Rico Enterprises operation and undisclosed

documents requested by the Freedom of Information Act. 5 USC § 522.

Declaring that West Texas Gulf Pipeline, Sunoco Pipeline, Chevron Pipeline and Energy

Transfer to profit from extortion be bonded and liable.

Declaring that the defendants have no lawful basis to take action, enforce, implement or

otherwise put into effect the discrimination of West Texas Gulf Pipeline, Sunoco Pipeline,

Chevron Pipeline and Energy Transfer from extending the decrees.  The deceased Royall

Watkins as Lessor for the Defendants non-contract and extract finances, payments and

operations that shall be placed in an escrow account for court-ordered and be bonded.

Preventing the Defendants from taking any actions to enforce, implement or otherwise put into effect the decisions to prohibit the trespassing and damages as Court deems just and proper.

The damages in this complaint is true and correct and damages of property owned by Will Dawson and heirs Sarah Dawson, Fleater Dawson, Flossie Dawson and Sheik Tehuti, that have paid taxes on the land at 15702 CR1315 Crossroads, Texas 75148 for 80 years.  The West Texas Gulf Pipeline, Chevron Pipeline, Sunoco Pipeline, Energy Transfer and other franchise sister companies has used fraud to Texas Railroad Commission on the API numbers and to dig 33 oil wells that paid more than 300 billion dollars.  The Defendants are claiming a deceased man signed a contract for the permit that does not own the property located at 15702 CR 1315 Crossroads, Texas owned and deeded to Sheik Tehuti Dawson Estates, Fahamme Nation of Nations Spendthrift Trust. The extortion is a violation in Henderson County, Texas and IRS tax fraud, collected money on private property and non-payment to property owner.  This discrimination and conspiracy has caused damages and trespassing by West Texas Gulf Pipeline, Chevron Pipeline, Sunoco Pipeline and Energy Transfer and using extortion today to transfer crude oil by fraudulently transporting, oil materials and water from the easement for theft by receiving.

**Judicial Notice:** **Petition plead for interest and damages Sunoco Pipeline, West Texas Gulf Pipeline, Chevron Pipeline and Energy Transfer conversion of Lessor and Lease is bound to comply that Sheik Tehuti, Will Dawson have property return to him Kolp v. Prewitt, supra and a right to sue for conversion Cotton v. Heimbecher, Tex. Civ. App.**

**Declaration 18 U.S.C. 1964 (a) (c) Rule 15, Rule 26 and Rule 37**

15 days from the verifiable receipt of this motion, a motion for summary judgment and order will be produced and submitted to the court for verification, unless within 15 days the defendant answers the motion for summary judgment by disputing the attach affidavit in accordance with Rule 37 and Rule 26.

NOTE; Maxim of Law; 1. In Commerce – Truth is sovereign. 2. For a matter to be resolved, it must be expressed.  Point of Law – Silence equates to agreement.  In accordance with 18 U.S.C. 1964 (a) (c).

Respectfully submitted,

By: _UCC-1308 /Sheik Tehuti_

Sheik Tehuti
P.O. Box 912
Hutchins, TX 75141
Sheik.tehuti@yahoo.com

## Certificate of Service

I hereby certify that on _August 30_, 2019, I filed the foregoing with the Clerk of the Court and will send notification of such filing to the following address by first class mail:

Kelcy L. Warren, CEO
Energy Transfer
8111 Westchester Dr.,
Suite 600
Dallas, Texas 75225

Michael J. Hennigan, CEO
Sunoco Logistic
1735 Market Street
Suite L1
Philadelphia, Pennsylvania
19103-7583

Michael K. Wirth
Chevron
7301 N. HWY 161, Ste 305
Irving, Texas 75039

Kelcy, L. Warren, CEO
West Texas Gulf
8111 Westchester Dr.,
Suite 600
Dallas, Texas 75225

Royall Watkins
Sparkman Hillcrest Memorial Park
..7405 West Northwest Highway
Dallas, Texas 75225

_ucc - 1 - 308 Shut Toto_

Sheik Tehuti
P.O. Box 912
Hutchins, TX 75141

## CERTIFICATE OF COMPLIANCE WITH RULE

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements.

1. This complaint complies with page limitation of Fed. R. Civ. P.3) because this complaint contains

   8,019 words.

2. This complaint complies with the typeface requirements Fed. R. Civ. P.3 and the type style

   requirements, because: this complaint has been prepared in a proportional spaced typeface using

   Microsoft Word Version 2016 in Times New Roman typeface with a 14 and 12-point, font.

   The undersigned understands that a material representation in completing this certificate, or circumvention of the type-volume limits in Eastern District Rule 3, may result in the Court's taking striking the brief and imposing sanctions against the undersigned counsel.

   *ucc 1 308 - Shak Teh*

   Sheik Tehuti